IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SEONG HO HWANG, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CASE NO. 3:16-cv-502-SRW |
| BRENT GLADDEN, et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**[1]

This matter is before the court on the plaintiffs' motion to remand, two motions to take jurisdictional discovery, and motion to enforce an October 2017 settlement agreement. *See* Doc. 31; Doc. 54; Doc. 63. Also before the court are plaintiffs' motion to strike portions of defendant's response in opposition to plaintiffs' motion to enforce settlement agreement,[2] *see* Doc. 37, and defendants' motion for leave to file a sur-reply in response to a March 23, 2018 show cause order regarding the existence of subject matter jurisdiction at the time of removal. *See* Doc. 56. Defendants oppose the plaintiffs' motions. Plaintiffs have taken no position on defendants' motion for leave to file a sur-reply. The motions have been briefed and are ready for review.

---

[1] The parties consented to final dispositive jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Doc. 17; Doc. 18.

[2] Plaintiffs' motion to strike concerns defendants' references to "prior drafts of the Purchase and Sale Agreement" in their opposition to plaintiffs' motion to enforce settlement agreement. Doc. 37 at 1. The prior drafts were not considered by the court for any purpose relating to this opinion and order. Accordingly, the motion to strike is moot.

1

Upon consideration, all pending motions will be denied for the reasons discussed herein. Also, defendants will be ordered to file an answer to plaintiffs' complaint, and the parties will be directed to confer and file a report of parties' planning meeting in accordance with Federal Rule of Civil Procedure 26(f).

I.   **Plaintiffs' Motion to Remand**

For the reasons set out in the court's March 23, 2018, order to show cause, complete diversity appears not to have been present at the time of the removal of this action. *See* Doc. 46. In a brief filed on April 10, 2018, plaintiffs moved to remand this cause to the Circuit Court of Lee County, Alabama, on the basis of lack of diversity. *See* Doc. 54.

In the March 23 show cause order, the undersigned set out the following, *inter alia*:

> Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). A federal district court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Therefore, a federal court is obligated to inquire *sua sponte* into subject matter jurisdiction "at the earliest possible stage in the proceedings." *Id.* at 410.
>
> When, as here, the purported statutory basis for federal jurisdiction is 28 U.S.C. § 1332(a)(1) – a civil action satisfying the amount-in-controversy requirement and between "citizens of different States" – there must be "complete diversity of citizenship. That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). *See also Hernandez v. Ferris*, 917 F. Supp. 2d 1224, 1226-27 (M.D. Fla. 2012) ("Federal courts have diversity jurisdiction over civil actions when the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant."). The court

2

is concerned that the parties are not completely diverse based on a recent filing by the plaintiffs, *see* Doc. 31; Doc. 31-15, and the court's subject matter jurisdiction must be confirmed before this case can proceed any further.

On June 27, 2016, defendants Brent Gladden and University Real Estate Group, LLC, removed this cause to this court from the Circuit Court of Lee County, Alabama, on the basis of diversity jurisdiction. *See* Doc. 1. In the notice of removal, the defendants represented that the parties are completely diverse because the plaintiffs are citizens of Georgia and the defendants are citizens of Alabama. *See id.* at 5. In support of the notice of removal, Mr. Gladden submitted an affidavit in which he testified that he is a resident of Alabama, and that he is the sole member of University Real Estate Group, LLC. *See* Doc. 1-3 at 2 ("I am the President and sole member of University Real Estate Group, LLC ... an Alabama limited liability company with its principal place of business in Auburn, Alabama."). After removal, the plaintiffs did not seek remand due to a lack of complete diversity. Also, as it must, the court assured itself of subject matter jurisdiction at the time of removal and concluded that the parties were completely diverse based on the defendants' representations in the notice of removal and Mr. Gladden's affidavit testimony. *See Univ. of S. Ala.*, 168 F.3d at 409-10.

However, in the motion to enforce a settlement agreement filed on February 12, 2018, the plaintiffs represent that Mr. Gladden is not the sole member of University Real Estate Group, LLC. *See* Doc. 31 at 6-8. An exhibit to that motion is an email sent by Mr. Gladden on January 11, 2018, that states, in relevant part, "I did not originally realize that all members [of University Real Estate Group, LLC] had not executed the document to transfer all interest in [University Real Estate Group, LLC] to me, this was done in 2014. The one remaining member ... is now residing in Atlanta." Doc. 31-15 at 1-2. That omission potentially has jurisdictional significance. "A limited liability company, unlike a corporation, is a citizen of any state of which one of its members is a citizen, not of the state where the company was formed or has it principal office." *Dasan USA, Inc. v. Weapon Enhancement Solutions LLC*, 2016 WL 3996242, at *1 (N.D. Ga. 2016) (citing *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004)). "And, therefore …a limited liability company could be deemed a citizen of more than one state …." *Guthrie v. U.S. Government*, 2014 WL 12742190 at *2 (S.D. Fla. 2014). Thus, the fact that a member of University Real Estate Group, LLC, resides in Atlanta, Georgia, materially contradicts the defendants' representation in the notice of removal

3

that University Real Estate Group, LLC, is a citizen of Alabama for purposes of diversity jurisdiction.

* * *

Based on the new information of record – *i.e.*, that a member of University Real Estate Group, LLC, resides in Atlanta – it appears that University Real Estate Group, LLC is a citizen of Alabama and Georgia. *See Guthrie*, *supra*. It is undisputed that the plaintiffs are citizens of Georgia. "[B]ecause federal courts are of limited jurisdiction 'there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Hernandez*, 917 F. Supp. 2d at 1226 (quoting *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001)); *see also Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013); *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 680 (11th Cir. 2012). Thus, construing all doubts against the exercise of federal jurisdiction, complete diversity does not exist among the parties on the record now before this court, and the court lacks subject matter jurisdiction.

The defendants did not alert the court that Mr. Gladden's affidavit testimony in support of the notice of removal was inaccurate based on his recent recollection that he is not the sole member of University Real Estate Group, LLC, and that one of the members of University Real Estate Group, LLC, resides in Atlanta. As to this material change of fact regarding the parties' citizenship, defendants also have not attempted to explain whether there was subject matter jurisdiction at the time of removal or whether it exists at present, given that the plaintiffs and a defendant appear to be citizens of Georgia. "The party seeking to invoke a federal forum traditionally bears the burden of persuasion on jurisdictional issues such as establishing the citizenship of the parties." *Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344 (11th Cir. 2017) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); *Burns*, 31 F.3d at 1094 ("The defendant can remove to federal court if he can show, by a preponderance of the evidence, facts supporting jurisdiction.")). *See also Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (the party who removes a case to federal court must demonstrate subject matter jurisdiction). Therefore, to remain in federal court, the defendants must establish that the parties are completely diverse in light of the evidence that a member of University Real Estate Group, LLC, resides in Atlanta, Georgia.

Doc. 46 at 1-5.

In response to the show cause order, the plaintiffs argued that other non-diverse members of University Real Estate Group, LLC, had not transferred their interests in the LLC to Mr. Gladden in 2014 because the members failed to comply with the unanimity requirement of the LLC's operating agreement. *See* Doc. 36. After the defendants responded to the show cause order, however, defendants filed evidence showing that the non-diverse members of University Real Estate Group, LLC unequivocally waived the unanimity requirement of the operating agreement as of April 2, 2018 – the last date a member of the LLC acknowledged the transfer of interest to Gladden and waived the unanimity requirement. *See* Doc. 50 at 4; Doc. 50-8. *See also* Doc. 54 at 15 (Plaintiffs assert that "[i]t was not until early 2018 that the parties reflected unanimity to transfer their membership interests."). Plaintiffs argue that the 2018 waiver is not an unequivocal reflection that the members of the LLC intended to waive the unanimity requirement. *See* Doc. 54 at 15. The court cannot agree.

"Regarding the waiver of rights under a contract generally … '[a] waiver will not be implied from slight circumstances, but must be evidenced by an unequivocal and decisive act, clearly proved.'" *Ex parte Textron, Inc.*, 67 So. 3d 61, 66 (Ala. 2011) (quoting *Isom v. Johnson*, 205 Ala. 157, 159-60, 87 So. 543, 545 (Ala. 1920)). The April 2, 2018 acknowledgement constitutes clear evidence of "an unequivocal and decisive act" by the members of University Real Estate Group, LLC, to waive the unanimity requirement and to affirm that all interest in the LLC has been transferred to Gladden. The evidence of

5

record establishes that Gladden is the sole member of University Real Estate Group, LLC. Gladden is a citizen of Alabama, and, because he is the sole member of the LLC as of April 2, 2018, University Real Estate Group, LLC is also a citizen of Alabama for purposes of diversity jurisdiction. *See* Doc. 1-3; Doc. 50-8. Plaintiffs are citizens of Georgia. *See* Doc. 1-3; Doc. 10 at 4.

At this point in the proceedings, a possible lack of subject matter jurisdiction at the time of removal is immaterial because the parties are now completely diverse. A case that is improperly removed may not be remanded to state court if the removing party cures the defect in removal prior to the entry of a final judgment. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64, 117 S. Ct. 467, 471 (1996) ("The question presented is whether the absence of complete diversity at the time of removal is fatal to federal-court adjudication. We hold that a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered."). After the March 23 show cause order, the defendants cured the jurisdictional defect. A final judgment has not been entered, and the record contains sufficient evidence to establish that the parties are completely diverse in citizenship. Thus, the plaintiff's motion to remand will be denied.

**II.     Plaintiffs' Motions for Jurisdictional Discovery**

The plaintiffs request an opportunity to conduct jurisdictional discovery if the court finds that they have not shown that diversity jurisdiction is lacking based on the arguments in their response to the show cause order. *See* Doc. 54 at 2; Doc. 63. Specifically, the plaintiffs "ask for limited discovery to determine Mr. Gillespie's citizenship." *Id.*

"Where further factual development is necessary to resolve issues of subject-matter jurisdiction, district courts may allow jurisdictional discovery." *Lawrence v. Nation*, 192 F. Supp. 3d 1260, 1266 (M.D. Ala. 2016) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982)). In *Lawrence*, the Court denied a request for jurisdictional discovery because "the evidence currently available" supported a finding on the ultimate jurisdictional issue. *Id.*

The plaintiffs rely primarily on *McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F. Supp. 2d 1279 (M.D. Ala. 1999), which sets out the guiding principles for determining an individual's citizenship for purposes of diversity jurisdiction. In *McDonald*, the Court observed as follows:

> The law is … well-established that a person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989); *Jagiella v. Jagiella,* 647 F.2d 561, 563 (5th Cir. 1981). Instead, "citizenship," or "domicile," is determined by two elements: (1) physical presence within a state; and (2) the mental intent to make a home there indefinitely. *Mississippi Band of Choctaw Indians,* 490 U.S. at 48, 109 S.Ct. at 1608; *Texas v. Florida,* 306 U.S. 398, 424, 59 S.Ct. 563, 576, 83 L.Ed. 817 (1939); *Scoggins v. Pollock,* 727 F.2d 1025, 1026 (11th Cir. 1984). Intention to remain there permanently is not necessary. *Yeldell* [*v. Tutt*]*,* 913 F.2d [533] at 537 [(11th Cir. 1990)]. It is enough to have a "floating intention" to stay indefinitely and also have the general desire to return to one's former domicile at some undetermined point of time. *Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir. 1983). However, it is not sufficient to have the existing intention to return upon the happening of a reasonably foreseeable event. *Gates v. Comm'r of Internal Revenue,* 199 F.2d 291, 294 (10th Cir. 1952).
>
> In determining domicile, a court should consider both positive evidence and presumptions. *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 352, 22 L.Ed. 584 (1874). One such presumption is that the state in which a person resides at any given time is also that person's domicile. *District of Columbia v. Murphy,* 314 U.S. 441, 455, 62 S.Ct. 303, 309-10, 86

L.Ed. 329 (1941); *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir. 1954). *See generally* 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3612. But because changes in residence are so common in this country, courts also refer to another presumption: once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state. *Yeldell,* 913 F.2d at 537; *McDougald v. Jenson,* 786 F.2d 1465, 1483 (11th Cir. 1986).

However, these presumptions are merely aids for the court; they cannot override the actual facts of the case. The objective facts bearing on an individual's "entire course of conduct" determine domicile for diversity-jurisdiction purposes. *Wasson v. Northrup Worldwide Aircraft Services, Inc.,* 443 F.Supp. 400, 404 (W.D. Tex. 1978) (quoting *Stine,* 213 F.2d at 448). Facts frequently taken into account include but are not limited to: current residence; residence of family and dependents; place of employment and name of business; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in church, clubs, and business organizations; driver's license and automobile registration; and payment of taxes. *Garcia v. American Heritage Life Ins. Co.,* 773 F.Supp. 516, 520 (D. P.R. 1991); 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3612. No single factor is conclusive; instead, a "totality of evidence" approach is necessary. *National Artists Management Co. v. Weaving,* 769 F.Supp. 1224, 1228 (S.D. N.Y. 1991).

An individual's statements of intent also are considered in determining domicile. However, when subjective expressions of intent conflict with established facts, courts accord them little weight. *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986); *Hendry v. Masonite Corp.,* 455 F.2d 955, 956 (5th Cir. 1972). But when subjective expressions of intent accord with objective facts, the subjective testimony bolsters the objective evidence.

*Id.* at 1280-81 (footnotes omitted).[3]

---

[3] The Eleventh Circuit Court of Appeals adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent, which is binding unless and until overruled or modified by the Eleventh Circuit *en banc*. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

Gillespie rented an apartment in Atlanta, Georgia, in June 2016. *See* Doc. 48-2. He testifies by affidavit that he resides in Atlanta for six months of each year and in Alabama for the remaining six months. *See id.* He further testifies that he intends to remain a citizen of Alabama, his family resides in Alabama, he has an Alabama telephone number, he has an Alabama driver's license, and he is registered to vote in Alabama. *See id.* His mail, health insurance policy, and auto insurance policy are delivered to his Alabama address, where he has resided for approximately twenty years. *See id.* This evidence weighs heavily in favor of a finding that Gillespie is an Alabama citizen.

Plaintiffs argue that Gillespie's silence with respect to the location of his personal or real property, brokerage or bank accounts, and membership in church, clubs, and business organizations is material and should mitigate in favor of a finding that he is a Georgia citizen. *See* Doc. 54 at 20. The plaintiffs also argue that Gillespie is a citizen of Georgia due to the fact that he is employed in Atlanta and because of his posts on Facebook between May and August 2016, in which Gillespie states that he is "relocating" or, later, has "moved" to Atlanta and he will miss his former clients and friends. *See id.* However, even giving these arguments full credit, Gillespie's silence concerning the location of his property, brokerage or bank accounts, and his membership in organizations; three posts on Facebook which use the words "relocating" and "moved" when referring to Atlanta; and Gillespie's testimony that he lives and works in Georgia for six months of the year, do not overcome the overwhelming evidence in Gillespie's sworn affidavit that he is an Alabama citizen who resides in Georgia part-time. The evidence of record in this case is sufficient to determine Gillespie's citizenship, to the extent that this determination is material. The

court finds that all members of University Real Estate, LLC, including Gillespie, affirmed as of April 2, 2018 that they transferred their interests in the LLC to Gladden. Assuming *arguendo* that Gillespie's citizenship is pertinent to the existence of subject matter jurisdiction, the court concludes that Gillespie is a citizen of Alabama, not Georgia, under the "totality of evidence" for purposes of diversity jurisdiction. Thus, the parties are completely diverse. The court needs no additional evidence to determine Gillespie's citizenship, and jurisdictional discovery is not warranted.

### III. Motion to Enforce Settlement Agreement

Based on the representations of the parties, this case has been in a settlement posture since April 19, 2017. *See* Doc. 24; Doc. 25. According to the plaintiffs, the parties mediated and reached an agreement in principle to settle on April 13, 2017. *See* Doc. 31 at 3. Disputes remained thereafter about the final language of the settlement agreement; plaintiffs assert that these were resolved following six months of negotiations. *See id.* On October 11, 2017, the parties executed a settlement agreement. *See id.* The October 2017 settlement agreement, and an unexecuted Purchase and Sale Agreement attached to that agreement, are the subject of the motion to enforce the settlement agreement.

This matter has not proceeded beyond the initial pleadings stage. Defendants have yet to answer the complaint, and there has been no discovery. Now, over a year after the parties informed the court that this matter was settled and after a failed mediation, the

parties disagree once again over the terms of settlement.[4] In support of their motion, the plaintiffs argue that the parties have entered into a binding and valid settlement agreement and that the terms of the agreement obligate the defendants to purchase the property at issue in this litigation. Defendants contend that they have not violated the October 2017 agreement, that they exercised their right to terminate the agreement, that there is no executed or fully formed Purchase and Sale Agreement, and that they cannot be forced to close on the sale of the property or to execute the draft Purchase and Sale Agreement. *See* Doc. 41.

"[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." *Kent v. Baker*, 815 F.2d 1395, 1400 (11th Cir. 1987). The court has jurisdiction to resolve this dispute.

The court does not reach the parties' arguments on the merits of the alleged breach of the October 2017 settlement agreement because plaintiffs are foreclosed from moving to enforce the settlement agreement or seeking damages as a result of a breach of that agreement. Defendants are correct that plaintiffs' motion to enforce the settlement agreement fails as a matter of law because plaintiffs elected to proceed with this lawsuit after the agreement allegedly was concluded, and only subsequently moved to enforce the settlement agreement. *See* Doc. 46 at 14-16. The Eleventh Circuit has held that it is an "established principle" that "one who agrees to settle his claim cannot subsequently seek

---

[4] The attorneys' representations to the court regarding settlement – which were made pursuant to Federal Rule of Civil Procedure 11 – are a different issue entirely from the question of whether the parties actually entered into a binding settlement agreement.

both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Kirby v. Dole*, 736 F.2d 661, 663–664 (11th Cir. 1984) (citations omitted); *see also Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 279 (11th Cir. 1988) ("It is an established principle that 'one who agrees to settle his claim cannot seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle.'") (quoting *Kirby*, 736 F.2d at 664); *Perryman v. West*, 949 F. Supp. 815, 822 (M.D. Ala. 1996) (same). The "general principle" and its application in *Kirby* is fatal to plaintiffs' motion to enforce the October 2017 settlement agreement.

In *Kirby*, the plaintiff was a former employee of the Federal Aviation Administration ("FAA") who had entered into a settlement agreement with the FAA which expressly provided that, in the event of a breach, upon written request of the employee, the agency would reinstate his complaint for further processing. *Kirby*, 736 F.2d at 662. After alleging a breach, the employee subsequently reinstated his complaint of discrimination, as the settlement agreement provided, and then also sued for damages for the breach as well as for specific performance of the settlement agreement. *Id.* at 662-63. The *Kirby* court held:

> Reinstatement of his complaint is appellant's only remedy for the government's breach of the settlement agreement in this case. This result is mandated not by an exhaustion requirement, nor by our interpretation of the settlement agreement as providing reinstatement as the exclusive remedy, but rather by the established principle that one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle.

*Id.* at 663-64 (citing *Strozier v. General Motors Corporation*, 635 F.2d 424 (5th Cir. 1981) (*per curiam*); *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944 (1976)) (footnote omitted).

Here, the October 2017 settlement agreement provides that, in the event defendants fail to close on the property or they terminate the settlement agreement, plaintiffs "shall be entitled to proceed with the Lawsuit." Doc. 31-2 at 2, 3. Plaintiffs moved to reopen this lawsuit, and the court granted the motion.[5] Subsequently, the plaintiffs moved to enforce the October 2017 settlement agreement and seek damages for breach of contract. This case is factually analogous to *Kirby* such that the "established principle" applies – *i.e.*, the only remedy now available to the plaintiffs for the alleged breach of the October 2017 settlement agreement is reinstatement of the complaint, which is a remedy available under the terms of the settlement agreement and the one selected by the plaintiffs. Thus, the motion to enforce the settlement agreement and plaintiffs' prayer for damages for breach of that agreement are due to be denied.

**IV.     Conclusion and Order**

Consistent with the foregoing, and upon consideration, it is hereby

---

[5] The court dismissed this cause for lack of prosecution on October 23, 2017. *See* Doc. 28. Shortly thereafter, on October 25, 2017, the plaintiffs filed an unopposed motion to reopen the case and to stay all proceedings until January 18, 2018 so that they could attempt to consummate the October 7, 2017 settlement agreement. *See* Doc. 29. The court held the motion in abeyance for a longer period of time than the parties requested, and this matter remained dismissed without prejudice. Between October 25, 2017 and early-February 2018, plaintiffs did not withdraw their motion to reopen this cause. In early-2018, plaintiffs' counsel notified the court by telephone that the settlement would not be finalized. *See* Doc. 30. On February 6, 2018, the court granted plaintiffs' motion to reopen this case and vacated the order of dismissal. *See id.* Plaintiffs did not object to or seek modification of the February 6, 2018 order prior to filing the motion to enforce the October 2017 settlement agreement.

13

ORDERED as follows:

(1) Plaintiffs' motion to enforce the October 2017 settlement agreement is DENIED. *See* Doc. 31.

(2) Plaintiffs' motion to strike is DENIED as MOOT. *See* Doc. 37.

(3) Plaintiffs' motion to remand and motions for jurisdictional discovery are DENIED. *See* Doc. 54; Doc. 63.

(4) Defendants' motion for leave to file a sur-reply is DENIED as MOOT. *See* Doc. 56.

(5) The defendants shall file an answer or otherwise respond to the plaintiffs' complaint, *see* Doc. 1-4, on or before **June 29, 2018**.

(6) The parties are directed to file a report of parties' planning meeting as required by Federal Rule of Civil Procedure 26(f) on or before **June 29, 2018**. Qualified immunity is not at issue in this case. Consequently, the parties are cautioned that the pendency of a motion to dismiss will not operate to suspend discovery. Furthermore, when selecting proposed deadlines, the parties should be mindful that this matter will be set for trial during the term of court commencing on June 3, 2019, the deadline for dispositive motions will be set at least 180 days prior to the trial date, and discovery must be commenced in time to be concluded by 30 days prior to the deadline for dispositive motions.

Done, on this the 20th day of June, 2018.

/s/ Susan Russ Walker
                                                            Susan Russ Walker
                                                            United States Magistrate Judge