IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

SEONG HO HWANG, *et al.*, )
)
      Plaintiffs, )
)
v. )
) CASE NO. 3:16-cv-502-SMD
)
BRENT GLADDEN, *et al.*, )
)
      Defendants. )

## **MEMORANDUM OPINION AND ORDER**

### I.      **Introduction**

Plaintiffs, Drs. Seong Ho Hwang (Hwang) and Sin Ja Son (Son), purchased two adjoining lots in Auburn, Alabama, with the intention of building a chiropractic clinic. After closing on the property, plaintiffs were denied a construction loan for the clinic because the lots were burdened by properly-recorded restrictive covenants limiting them to residential use. Plaintiffs sue their real estate agent, Brent Gladden ("Gladden"), and his company, University Real Estate Group, LLC, on a variety of theories including fraud, breach of contract, and negligence. All of plaintiffs' claims arising from Gladden's failure to discover and disclose the restrictive covenants are due to be dismissed because plaintiffs had actual and constructive notice of the covenants prior to closing on the lots. In addition, under the doctrine of *caveat emptor* and the express terms of the sales contract, plaintiffs were solely responsible for determining the suitability of the land for their intended purpose. They could not rely upon any advice or representations made by real estate agents

involved in the sale. Accordingly, for the reasons stated below, defendants' Renewed Motion for Summary Judgment (Doc. 121) is hereby GRANTED and plaintiffs' Amended Complaint (Doc. 106) is DISMISSED in its entirety with prejudice.

## II. Plaintiff's Claims

Plaintiffs' amended complaint pleads nine separate counts against defendants. Counts one through six all arise directly from the restrictive covenants. Count One is a claim for breach of contract. Amd. Compl. (Doc. 106) ¶¶ 32-36. It alleges that defendants breached the sales contract by failing to find property suitable for commercial use and "instead representing Plaintiffs in the purchase of the Property, which is expressly prohibited from being used for commercial purposes by the restrictive covenants." *Id.* at ¶ 35. Count Two is a negligence claim. Amd. Compl. (Doc. 106) ¶¶ 37-41. It alleges that defendants breached various duties of care owed to plaintiffs because the property "is not suitable for Plaintiffs' intended commercial use as a chiropractic clinic, due to the restrictive covenants." *Id.* at ¶ 41. Count Three is a claim for wantonness. Amd. Compl. (Doc. 106) ¶¶ 42-44. It alleges that defendants acted in a wanton manner by "fail[ing] to disclose to Plaintiffs that the property is subject to restrictive covenants which prevent the Property from being used for commercial purposes." *Id.* at ¶ 43. Count Four is a fraud claim. Amd. Compl. (Doc. 106) ¶¶ 45-51. It alleges that defendants "represent[ed] that the Property was suitable for the commercial purposes intended by Plaintiffs" when it "was subject to the restrictive covenants and could not be developed for commercial use[.]" *Id.* at ¶¶ 47; 51. Count Five is a claim for fraudulent concealment. Amd. Compl. (Doc. 106)

¶¶ 52-56. It alleges that "Defendants fraudulently concealed or suppressed facts indicating that the property was bound by restrictive covenants which prevented the use of the Property for commercial purposes." *Id.* at ¶ 54. Count six is a claim for alleged breach of statutory duties under the Alabama Real Estate Consumer's Agency and Disclosure Act, Ala. Code §§ 34-27-81 through 34-27-85, including the duty to exercise reasonable skill and care in providing brokerage services and the duty to disclose all known information material to the purchase of the Property that was not discoverable to plaintiffs through reasonable investigation and observation. Amd. Compl. (Doc. 106) ¶¶ 57-63.

Counts seven, eight, and nine relate to a liability release entered by the parties subsequent to the denial of the construction loan. Count seven is a breach of contract claim. Amd. Compl. (Doc. 106) ¶¶ 64-70. It alleges that defendants breached the liability release by failing "to obtain the Covenants Release from the property owners in the Indian Hills subdivision in order to remove the restrictive covenants from the Property[.]" *Id.* at ¶ 65. Count eight is a claim for fraudulent inducement. Amd. Compl. (Doc. 106 ) ¶¶ 71-74. It alleges that "Plaintiffs would not have entered into the Liability Release had they known that Defendants could not or would not deliver the signed Covenants Release." *Id.* at ¶ 72. Finally, count nine is a fraudulent suppression claim. Amd. Compl. (Doc. 106) ¶¶ 75-79. It alleges that defendant Gladden suppressed the material fact that "he did not have the required signatures on the Covenants Release[.]" *Id.* at ¶ 78.

## III. Legal Standard

**Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of the plaintiff's claim dictate which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.* "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex*, 477 U.S. at 331 (White, J., concurring).

The court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001). However, a mere scintilla of evidence in support of a claim is insufficient; instead, the nonmovant must produce sufficient evidence to enable a jury to rule in his favor. *Id.* The Eleventh Circuit explains that "[s]imply put, the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotes and citations omitted).

## IV. **Undisputed Facts**

Drs. Son and Hwang are a married couple who are both chiropractors. Pls' Statement of Facts (SOF) 1, 2; Pls' Ex. A, Son Dep. (Doc. 131-1) at 12. They are originally from South Korea and have lived in the United States for over twenty years. Pls' Ex. A, Son Dep. (Doc. 131-1) at 7. Since 2011, they have operated a chiropractic clinic, Sugarloaf Pain and Rehab, in Sewanee, Georgia. Pls' SOF 4; Son Dep. at 9, 11. In 2013 they became interested in expanding their business by opening a second clinic in Auburn, Alabama. Pls' SOF 5; Son. Dep. at 20-21. They thought Auburn would be a good place to expand because a lot of Korean companies were opening in Alabama but no Korean chiropractors practiced there. Pls' SOF 7; Son. Dep. at 20-21.

Drs. Son and Hwang worked with a consultant named Song Ahn to find and purchase a suitable property. Pls' SOF 8-11. They were introduced to Mr. Ahn by the president of a Korean Alabama newspaper company. Pls' SOF 8; Son Dep. at 21. They expected Mr. Ahn to recommend properties and to assist them with the development process. Pls' SOF 11; Son Dep. at 20-21. Mr. Ahn was not a licensed real estate agent but was familiar with the Auburn area and had helped other Korean clients find and develop real estate. Pls' SOF 9; Son Dep. at 21-22; Pls' Ex. F, Ahn Dep. at 5. Drs. Son and Hwang did not pay Mr. Ahn anything for his services. Son. Dep. (Doc. 131-1) at 22.

Mr. Ahn showed Drs. Son and Hwang lots 41 and 42 in the Indian Hills Subdivision. Defs' SOF 25; Pls' Ex. F, Ahn Dep. at 5. He knew the property was for sale because it had a "for sale" sign displayed. Defs' SOF 27; Ahn Dep. at 6. Auburn Partners, LLC, owned the property, and Mr. Ahn contacted Mike Shannon of that company to confirm that it was commercial property and to learn the price. Defs' SOF 27; Ahn Dep. at 6. Mr. Shannon stated that the property was commercial and that the selling price was $450,000, which was non-negotiable. Defs' SOF 29, 30. Mr. Ahn presented the price to Drs. Son and Hwang, and they agreed to purchase it for the full asking price. Defs' SOF 35, 36; Ahn Dep. at 7.

Mr. Ahn contacted Mr. Gladden, a licensed real estate agent, and asked him to draft a real estate sales contract for the transaction. Pls' SOF 45; Pls' Ex. G, Gladden Dep. (Doc. 133-1) at 17. Mr. Gladden is the sole member of University Real Estate Group, LLC, and was acting as a representative of the company. Ex. G, Gladden Dep. (Doc. 133-1) at 15, 17. He used the standard contract form used by University Real Estate Group and filled in the specific information concerning this transaction. *Id.* at 17. Mr. Gladden understood that Mr. Ahn was working for Drs. Son and Hwang and that he was preparing the contract for them. Pls' SOF 50; Gladden Dep. at 19.

At some point prior to closing, Mr. Ahn asked Mr. Gladden to find out if the property was zoned commercial. Gladden Dep. at 19. He went to the City of Auburn Planning Department and confirmed that the property was in fact zoned commercial and that a chiropractic clinic was an allowable use under the zoning regulations. Pls' SOF 54;

Gladden Dep. At 19. Mr. Ahn brought the contract that Mr. Gladden prepared to Dr. Son for signature. Defs' SOF 39; Son. Dep. (Doc. 131-1) at 23. Mr. Ahn told her to sign as soon as possible before someone else bought the property. *Id.* Mr. Gladden made no representations concerning the property to Dr. Son or to Dr. Hwang. Defs' SOF 59-60; Son. Dep. (Doc. 131-1) at 23.

The three-page Real Estate Land Sales Contract (the "contract") contains a merchantable title clause stating: "[t]he Seller/s will furnish the Buyer/s good and merchantable title transferred by Warranty Deed free from any and all encumbrances except ad valorem taxes, not yet due and payable, existing restrictions, easements of record and applicable zoning ordinances[.]" Contract (Doc. 121-9) at 2. The contract also contains a "disclaimer of property condition" clause that states: "[n]either Seller nor any Agent makes representations or warranties regarding the condition of the Property except to the extent expressly and specifically set forth herein. Buyer/s has the obligation to determine, either personally or through or with a representative of Buyer/s choosing, any and all conditions of the property material to Purchaser's decision to buy the Property. . . . Except as otherwise stated in this Contract or addenda, Buyer/s accepts the Property in its present 'AS IS' condition." *Id.*

The contract contains a specific "disclaimers by real estate licensees" clause that provides: "Seller/s and Buyer/s acknowledge that they have not relied upon any advice or representations of any real estate licensee involved in this sale relative, but not limited to, (1) the legal or tax consequences of this contract and the sale, purchase or ownership of the

property, (ii) square footage and the size or area of the property, (iii) the availability and condition of the utilities, sewer service and septic systems, (iv) the investment or resale value of the property, (v) flood zones, or (vi) any other matter affecting their willingness to sell or purchase the property on the terms and price herein set forth. Seller/s and Buyer/s acknowledge that if such matters are of concern to them in the decision to sell or purchase the property, they have sought and obtained independent advice relative thereto." *Id.* at 3.

The contract also contains an "oral representations" clause and a "complete agreement" clause. *Id.* at 3-4. The oral representations clause provides that "[t]he parties hereto acknowledge that no oral statement, representation, promise or inducement shall have any validity nor shall be part of this agreement." *Id.* at 3. The complete agreement clause provides that "[t]he Seller/s and Buyer/s hereby acknowledge and confirm that this contract states the entire agreement between the parties and there have been no representations, covenants, statements or warranties, unless expressly stated herein, made to the Seller/s or Buyer/s by any person, whomever, Buyer/s and Seller/s have entered into this agreement based upon their own inspection and personal knowledge of the property and any financing agreements concerning said property and neither party has relied upon any representations or statements of any person whomever unless said representations or statements are expressly written herein." *Id.* at 4.

The contract identifies the buyer as Sugarloaf Pain and Rehab and the seller as Auburn Partners, LLC. *Id.* at 2. Drs. Son and Hwang are the sole members of Sugarloaf Pain and Rehab. LLC. Defs' SOF 9. Dr. Son signed for the buyer and Mr. Shannon signed

for the seller. *Id.* at 4. The contract states that Mr. Gladden's company, University Real Estate, was acting as an agent of the buyer, and Mr. Gladden signed as licensee and broker for the buyer. *Id.* at 3-4. There was no licensee or broker for the seller. *Id.* at 4. Mr. Gladden was paid a commission of $15,000 by the seller for his services. *Id.* at 3; Pls' Ex. G, Gladden Dep. (Doc. 133-1) at 20.

After the parties executed the sales contract, Mr. Ahn contacted Auburn attorney Travis Wisdom and asked him to put together a closing. Defs' SOF 66; Def's Ex. J, Wisdom Dep. (Doc. 102-11) at 4. Prior to the closing, a title search was performed on the property so that Mr. Wisdom could issue title insurance. Title Insurance Commitment (Doc. 121-15). Among the records revealed in the title search were the Restrictive Covenants of the Indian Hills Subdivision (the "covenants") that were properly recorded in the Lee County Probate Court on July 29, 1977. Covenants (Doc. 102-16). These covenants restricted all lots in the subdivision to residential use. *Id.* at 1. There were numerous references to the restrictive covenants in the chain of title for the property. Defs' SOF 83.

At the closing, Mr. Wisdom provided Drs. Son and Hwang with a warranty deed transferring title of the property to Hwason Holdings. Defs' SOF 88. Drs. Son and Hwang are the sole members of Hwason Holdings, a limited liability company. Defs' SOF 9. The warranty deed states that the property is being conveyed subject to the restrictive covenants. Defs' SOF 89. Mr. Wisdom also provided a signed title insurance commitment that listed the restrictive covenants as an exception to coverage. Defs' SOF 85, 86; Son

Dep. (Doc. 131-1) at 29. Dr. Son and Dr. Huang did not read any of the documents provided to them at closing. Defs' SOF 91, 92; Son Dep. (Doc. 131-1) at 30. Mr. Gladden made no representations concerning the property or the closing documents to Dr. Son or Dr. Huang at the closing. Defs' SOF 101-103.

After closing on the property, Drs. Son and Huang attempted to secure a construction loan to finance construction of a building for their clinic. Pls' SOF 70. The bank would not issue the loan because the property was subject to the restrictive covenants limiting it to residential use. Pls' SOF 71.

The parties signed a liability release that states that plaintiffs release all claims against defendants for consideration of ten dollars and "delivering of information" to plaintiffs "regarding the Real Estate Transactions." Release of Liability (Doc. 121-28) at 2.

## V.    **Discussion**

This case was initially filed in Alabama state court, and defendants removed it to this court on the basis of diversity jurisdiction. Notice of Removal (Doc. 1). Under the *Erie* doctrine, a federal court sitting in diversity applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F.3d 1143, 1148 (11th Cir. 2010). Therefore, Alabama law governs plaintiffs' claims.

## A. Plaintiffs Had Actual and Constructive Notice of the Covenants.

Counts One through Six are all premised on the core allegation that defendant Gladden should have discovered and disclosed that the property was subject to restrictive covenants limiting it to residential use. These claims all fail because plaintiffs had actual and constructive notice of the covenants. It is undisputed that the restrictive covenants for the Indian Hills Subdivision were properly recorded in the Lee County Probate Court in 1977 and numerous references to the covenants appear in the chain of title for Lots 41 and 42. Under Alabama law, "the proper recordation of an instrument constitutes *conclusive notice to all the world* of everything that appears from the face of the instrument" and "the purchasers of real estate are presumed to have examined the title records and knowledge of the contents of those records is imputed to them." *Haines v. Tonning*, 579 So. 2d 1308, 1310 (Ala. 1991) (emphasis added) (internal quotes and citations omitted). *See also, Maxwell v. Boyd,* 66 So. 3d 257, 262 (Ala. Civ. App. 2010) (applying *Haines* rule to properly-recorded restrictive covenants). Covenants, easements, and other burdens on land that appear in the publicly-available title record are simply not latent defects.

Alabama has long recognized that private covenants may restrict land to residential use even when the applicable public zoning ordinance permits commercial use. *Brown v. Morris*, 279 Ala. 241, 243 (Ala. 1966). *See also, Dauphin Island Prop. Owners Assoc., Inc. v. Pitts*, 993 So. 2d 477, 480 (Ala. Civ. App. 2008). Zoning and covenants are two distinct sources of limitations on land use. *Id.* When purchasers buy a lot in a subdivision burdened by properly-recorded restrictive covenants, they are charged by law with notice

11

of the contents of those covenants. *Ex parte Smokerise Homeowners Assoc.*, 962 So. 2d

793, 802 (Ala. 2007); *Willow Lake Residential Assoc. v. Juliano*, 80 So. 3d 226, 237-38

(Ala. Civ. App. 2010). Therefore, as a matter of law, plaintiffs here had notice of the

covenants restricting the property they purchased to residential use.

Plaintiffs' constructive knowledge is bolstered by their actual knowledge. At

closing, plaintiffs received a warranty deed conveying title that explicitly states that "[t]his

conveyance is subject to . . . Restrictive Covenants of Indian Hills Subdivision filed for

record on July 29, 1977[.]" Defs' SOF 89. They also received a signed title insurance

commitment that lists the restrictive covenants among the exceptions to coverage. Title

Commitment, Defs' Ex. N (Doc. 121-15). Plaintiffs chose not to read these documents,

but Alabama law does not allow plaintiffs to "close their eyes to avoid the discovery of the

truth[.]" *Johnson v. State Farm Ins. Co.*, 587 So. 2d 974, 980 (Ala. 1991) (rejecting fraud

claim where the plaintiffs "would have had to close their eyes and disregard all facts that

they knew . . . in order to rely on [the defendant's] representations"). Therefore, because

plaintiffs had actual and constructive knowledge of the restrictive covenants, they cannot

maintain a cause of action against defendants for failing to discover and disclose them, and

Counts one through six fail as a matter of law.

### B. *Caveat Emptor*

Plaintiffs' claims are also foreclosed by the doctrine of *caveat emptor*, or, "let the

buyer beware." Alabama applies *caveat emptor* to the sale of unimproved land. *Clay*

*Kilgore Constr., Inc. v. Buchhalter/Grant, L.L.C.*, 949 So. 2d 893, 896-97 (Ala. 2006);

*DeAravjo v. Walker*, 589 So. 2d 1292, 1293 (Ala. 1991).  Under this doctrine, it is solely

the buyers' responsibility to determine the condition of the property, and the seller and real

estate agents involved in the transaction have no duty to disclose any defects.  *Blaylock v.*

*Cary*, 709 So. 2d 1128, 1130 (Ala. 1997); *Cato v. Lowder Realty Co.*, 630 So. 2d 378, 382

(Ala. 1993).  Here, it is undisputed that lots 41 and 42 in the Indian Hills Subdivision were

empty lots, and *caveat emptor* applies.  *Id.*

Alabama courts recognize three exceptions to the *caveat emptor* doctrine.  *Nesbitt*

*v. Frederick*, 941 So. 2d 950, 956 (Ala. 2006).  First, if a buyer and seller have a fiduciary

relationship, Ala. Code § 6-5-102 (1975) imposes a duty to disclose known defects.

*Nesbitt*, 941 So. 2d at 956.  Second, a seller has a duty to disclose known material defects

affecting health and safety that are not readily observable and are unknown to the buyer.

*Id.*  And third, if the buyer makes a specific inquiry about a material condition concerning

the property, the seller has a duty to disclose known defects.  *Id.*  However, none of these

exceptions apply when property is purchased subject to an "as is" clause in the purchase

contract.  *Clay Kilgore Constr.,* 949 So. 2d at 897-98; *Teer v. Johnston*, 60 So. 3d 253,

258-61 (Ala. 2010).

The Alabama Supreme Court explains that "[u]nder a growing body of Alabama

caselaw in which the rule of *cavaeat emptor* is applicable, a fraud or fraudulent-suppression

claim is foreclosed by a clause in the purchase contract providing that the purchaser of real

property accepts the property 'as is.'" *Clay Kilgore Constr.,* 949 So. 2d at 897.  The court

explains that under Alabama law, "an 'as is' clause negates the element of reliance essential

to any claim of fraud and/or fraudulent suppression." *Id.* at 898. Plaintiffs argue, without citation to any authority, that an "as is" clause only insulates the seller and their real estate agent, not the buyers' agent. Pls' Opp. (Doc. 136) at 25-26. However, because an "as is" clause negates the buyer's reliance on any representations concerning the property, it applies equally to all real estate agents involved in the transaction. There is no support in Alabama law for plaintiffs' argument that a real estate agent representing a buyer guarantees or warrants that the property purchased is suitable for the buyer's intended purpose. *See* Pls' Opp. at 25-29.

Plaintiffs also argue that "[i]n the case of actual misrepresentation or fraud . . . an 'as is' clause will not relieve the vendor of liability." Pls' Opp. (Doc. 136) at 25. They rely on 37 Am. Jur. 2d *Fraud and Deceit* § 326 (2005), not Alabama law, to support this proposition. The Alabama Supreme Court explicitly rejected plaintiffs' position in *Teer v. Johnston*, 60 So. 3d 253, 258-61 (Ala. 2010). *Teer* explains that "[w]hile it remains true that several [other] jurisdictions permit claims of fraud despite an 'as is' clause . . . what matters is not the number of jurisdictions following one rule or another, but rather which rule is more appropriate." *Id.* at 261. The Alabama rule "places the onus on the buyer to protect his interests through his own investigation and inspection of the property being purchased." *Id.* "The buyer's awareness should be heightened even more when . . . signing a purchase agreement or deed that contains a disclaimer as ubiquitous as an 'as is' clause . . . because such a clause serves as a clear and common disclaimer of any previous representations" concerning the property. *Id.* The contract here plainly states that "Buyer/s

14

accept the property in its present 'AS IS' condition," and this clause effectively vitiates any recognized exceptions to *caveat emptor*.

### C. The Contract

Of course, buyers may always insulate themselves from any unintended effects of *caveat emptor* by express agreement in the sales contract. *Teer*, 60 So. 3d at 258; *Hope v. Brannan*, 557 So. 2d 1208, 1210-11 (Ala. 1989). For example, *Teer* explains that "the buyer is not without recourse in preserving the viability of previous representations by simply negotiating for the inclusion of such representations in the deed or contract for sale." 60 So. 3d at 261. Rather than preserving the viability of their claims against defendant Gladden, the contract here expressly nullifies them.

Examination of the contract shows that in addition to the "as is" clause, plaintiffs specifically agreed in the "disclaimers by real estate licensees" clause "that they have not relied upon any advice or representations of *any real estate licensee* involved in this sale relative, but not limited to, (i) the legal . . . consequences of . . . ownership of the property . . . or (vi) any other matter affecting their willingness to . . . purchase the property on the terms and price herein set forth." Contract (Doc. 121-9) at 3 (emphasis added). This clause continues that "Buyer/s acknowledge that if such matters are of concern to them in the decision to . . . purchase the property, they have sought and obtained *independent advice* relative thereto." *Id.* (emphasis added).

Legal restrictions on land use are a "legal consequence of ownership of the property" covered by this clause. It is undisputed that defendant Gladden was the only real

estate licensee involved in the sale.  If he made any representations or gave any advice concerning the legally permissible uses of the property, any claim based upon those representations or advice is directly foreclosed by this clause.  This clause also refutes plaintiffs' argument that defendant Gladden was the expert they relied upon to determine whether the property could be used as a chiropractic clinic.  Pls' Opp. at 27-28.  The contract required plaintiffs to obtain "independent advice," not advice from a real estate licensee involved in the sale who signed the contract.  Contract (Doc. 121-9) at 3.

Plaintiffs also agreed that "neither Seller nor *any Agent* makes representations or warranties regarding the condition of the property" and that "Buyer/s has the obligation to determine, either personally or through or with a representative of Buyer/s choosing, any and all conditions of the Property material to Purchaser's decision to buy the property[.]" Contract (Doc. 121-9) at 2 (emphasis added).  Defendant Gladden is an agent covered by this clause.  Plaintiffs had the sole obligation to determine the condition of the property and could not use defendant Gladden as their representative for this purpose.  *Id.*

Finally, plaintiffs agreed in the "complete agreement" clause that "this contract states the entire agreement between the parties and there have been no representations, covenants, statement or warranties, unless expressly stated herein, made to the . . .Buyer/s *by any person, whomever*," and Buyer/s "have entered into this agreement based upon their own inspection and personal knowledge of the property . . . and neither party has relied upon any representations or statements *of any person whomever* unless said statements or representations are expressly written herein." *Id.* at 4 (emphasis added).  The parties further

16

agreed that "no oral statement, representation, promise or inducement shall have any validity nor shall be part of this agreement." *Id.* at 3. These clauses further bar plaintiffs' claims.

The clear and unequivocal terms of the contract here completely insulate defendant Gladden from all of plaintiffs' claims arising from his alleged failure to discover and disclose the restrictive covenants. By the clear terms of the contract, plaintiffs were solely responsible for determining whether the property was suitable for their intended purpose of building a chiropractic clinic, and they were prohibited from shifting this responsibility to defendant Gladden because he was a real estate agent covered by the contract.

### D.     The Liability Release

Counts Seven, Eight and Nine all concern the liability release. Amd. Compl. (Doc. 106) ¶¶ 64-79. In these counts, plaintiffs' allege that defendant Gladden contractually agreed to obtain a covenants release from enough property owners in the Indian Hills Subdivision to remove the restrictive covenants from Lots 41 and 42. *See, Id.* at ¶¶ 65-66, 71, 74, 75, 79. Examination of the written terms of the liability release shows that plaintiffs agreed to release defendants from all claims in exchange for ten dollars and "delivering of information . . . regarding the Real Estate Transactions[.]" Release of Liability (Doc. 121-28) at 2. The Court finds that the vague term "delivering of information" is simply too ambiguous, broad and uncertain to have any meaning at all as used in the liability release here. The term "information" cannot be reasonably construed as meaning delivery of an effective release of the covenants as plaintiffs urge, nor as delivery of however many

17

signatures defendant Gladden managed to obtain as defendants urge. In fact, the undefined term "information" cannot be reasonably construed as relating to the covenants release at all. "Information" could mean virtually anything. If the parties intended to enter a contract concerning a covenants release, they should have so stated in clear and unambiguous terms.

Although Alabama law generally disfavors nullification of contracts on ambiguity grounds, where, as here, the terms of a contract are so ambiguous, uncertain, and incomplete that the reasonable intentions of the parties cannot be determined, the contract is invalid and unenforceable. *Ala. Nat. Life Ins. Co. v. Nat'l Union Life Ins. Co*., 151 So. 2d 762, 766 (Ala. 1963); *Cook v. Brown*, 393 So. 2d 1016, 1018 (Ala. Civ. App. 1981). Because the term "information" is patently ambiguous, the Court finds that the liability release is a nullity. The release is invalid as a defense, and plaintiffs' claims based upon it fail and are due to be dismissed.

## VI. Conclusion

For the reasons stated above, it is hereby ORDERED that defendants' Renewed Motion for Summary Judgment (Doc. 121) be GRANTED, and that plaintiffs' Amended Complaint be DISMISSED in its entirety with prejudice against both defendants Brent Gladden and University Real Estate Group, LLC.

DONE this 31st day of January, 2020.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
UNITED STATES MAGISTRATE JUDGE